LYCURGUS M. QUIN v. PIKE COUNTY.

[48 South. 235.]

HIGHWAYS. *Improvement and maintenance. Contracts. Laws* 1900,. *ch.* 119, *p.* 153. *Bond of contractor.*

Under Laws 1900, ch. 119, p. 153, providing for improving and maintaining the highways by contracts to be let by the board of supervisors, the contractors to execute bonds in a penalty equal to the amount of their respective bids, a contract otherwise proper is not fatally defective because it embraced all of the highways in two supervisors' districts of the county, nor because the penalty of the contractor's bond was by inadvertance a trifle less than his bid.

FROM the circuit court of Pike county.

HON. MOYSE H. WILKINSON, Judge

Quin, appellant, was plaintiff in the court below; Pike county, appellee, was defendant there. From a judgment sustaining the defendant's demurrer to the declaration and dismissing the suit plaintiff appealed to the supreme court.

The opinion of the court fully states the facts.

*Price & Whitfield,* for appellant.

Appellant's contract with the county was not invalid. The subject matter was one with reference to which the county could legally make a contract. The declaration distinctly shows that the road law, Laws 1900, ch. 119, was adopted and put into force in Pike county by order of the board of supervisors of the county in May, 1902; and that the county roads were divided into divisions, to wit, first-class and second-class roads, and also into links, by the board of supervisors in December, 1902. It is distinctly set forth in the declaration that the board, in December, 1902, prepared and placed on file with the clerk of the board detailed plans and specifications for the working of the public roads of the county, for the use and inspection of prospective

bidders. And, further, the declaration avers that proper advertisement was made for bids and that appellant's bid was made in due form and accepted, being accompanied by requisite bond. The work done by appellant was passed upon by the board and accepted, from time to time, as it progressed. And partial payments were made at different times to the appellant.

The contention of the county is that the board of supervisors contracted with appellant to work the county public roads in the second and third supervisors' districts, after the board had adopted Laws 1900, ch. 119, thereby making the chapter the road law of the county; and that the board did not let out each separate link of every public road in the county or each separate road in the county under a separate and distinct contract. Our answer to this is that it was within the province of the board of supervisors, acting for the best interests of the county, to accept a bid for the working of one link or bid for the working of two or more links or two or more roads in one or more of the districts of the county. *Madison Co. v. Stewart,* 74 Miss. 160, 20 South. 857.

It is impossible legally to pass upon and construe appellant's contract with the county without taking carefully into consideration all of the orders passed by the board in open session including the board's adoption of Laws 1900, ch. 119, as the county's public road law, and all of the orders leading up to the consummation of the contract here involved, especially the partition of all of the public roads in the five supervisors' districts, and further the subdivision of every public road in the first and second supervisors' districts into first and second-class roads as provided by the act above mentioned, and also the subdivision of the public roads into links. These subdivisions of the roads into links are nowhere required by Laws of 1900, ch. 119, even if they were required by Code 1892, § 3929, before the county adopted chapter 119 aforesaid as its road law.

An all sufficient answer to appellee's contentions in this case is that any just and fair construction of the contract with ap-

pellant must be that the roads in question were contracted to be worked by divisions or links, and that the technical law, Code 1892, § 3929, was fully complied with in the execution of the contract.

The case of *State v. Vice,* 71 Miss. 912, 15 South. 129, relied upon by appellee, is a criminal case and entirely inapplicable here. At the time that case was decided Laws 1900, ch. 119, had not been enacted. The provisions of Code 1892, § 3929, that every road or subdivision should be let out under a separate contract, are not contained in chapter 119 of Laws 1900. Nor is there anything in Laws 1900, ch. 119, requiring a contract to be made for each road or subdivision thereof let out.

The fifth section or paragraph of chapter 119 of Laws 1900 is the only part of the statute dealing with the letting out of the contract or contracts for working the public roads of the county. Its language is: "Contract or contracts for working and keeping in condition in its entirety all of the public roads or any section thereof." Certainly the word, "section," is equivalent in meaning to "group" or "district" or some such collective word.

The fact that the appellant's bond in favor of the county was for a sum less than the amount of his bid is not such a substantial defect as will, in the absence of other defects, invalidate the contract.

*J. B. Sternberger* and *E. J. Simmons,* for appellee.

Laws 1900, ch. 119, was the sole repository of the power which the legislature conferred upon the different county boards of supervisors for the working of the public roads and highways. When Pike county chose to come under the provisions of this legislative act, it became irrevocably committed to the directions contained therein, and was without authority to read into that act a grant of power at variance with the plain language employed therein.

As was held in *State v. Edwards,* 81 Miss. 399, 33 South. 172, before the provisions of the act became legally effectual and practically operative, it was necessary that its essential provisions should be complied with by the board of supervisors. As we construe the act, it was necessary before the provisions of the act could be carried out, that the board of supervisors should meet and classify the public roads of the county as roads of the first-class and roads of the second-class, and should divide the roads, thus classified, each into convenient links, and should then inspect each link on each road as subdivided, with a view of preparing detailed plans and specifications for the working of such link or road, by a contract, which plans and specifications must be filed for record with the clerk of the board for inspection by prospective bidders, prior to the letting of contracts. An examination of the fifth section or paragraph of the act in question, construed with reference to the language of the first and fourth sections, will render it perfectly clear that the roads of the county, classified and subdivided into links should have been let as an entirety or by links; that is to say, it was competent for the board of supervisors to let out all of the roads of the county as thus classified and subdivided, as an entirety by one contract, or to let out one or more links or sections of any road by a separate contract. The word, "section," as used in the act, is used interchangeably with the word "link." The phrase, "any section thereof," as used in the act, means any link or section of a public road as classified and subdivided, and not a political subdivision of the county.

As a condition precedent to the making of valid contract by the board of supervisors in behalf of the county, for the working of the county public roads, not only should the act have been adopted and applied to the county by a proper order entered upon the board's minutes, but the classification of the roads should have been into first and second-class roads, and each of these divided into convenient links. And, to be legal, the contract should have been not only to work the roads of the county

as an entirety, or for the working of one or more links under each separate contract, but that the working of the road or any link thereof should have been given out on competitive bidding, and bond should have been required with sufficient sureties and in such sum as might be fixed by the board and in no event to be less than the contract price, which was $24,272.50. Yet the appellant's declaration shows that the county roads were let to appellant, not as an entirety nor by links or sections of a road, but instead a lump contract was entered into with appellant for him to work all of the roads in the second and third supervisors' district. Under the strict requirements of Code 1892, § 344, prescribing that all contracts made in violation of law shall be invalid, the contract with appellant must be held to be a legal nullity. *State v. Edwards,* 81 Miss. 399, 33 South. 172; *Elmore v. State,* 81 Miss. 422, 33 South. 225; *State v. Vice,* 71 Miss. 912. The jurisdiction conferred by statute on boards of supervisors is special and limited, and must be exercised strictly according to the terms of the statute law. *Ballard v. Davis,* 2 Geo. (Miss.) 525; *Jefferson County, v. Grafton,* 74 Miss. 435, 21 South. 247; *Bridges v. Clay Co.,* 58 Miss. 817; *Dixon v. Greene Co.,* 76 Miss. 794, 25 South. 665; *Benton Co. v. Patrick,* 54 Miss. 240.

The contention of appellant that the legislature could not have meant that each link or division of every road in the county should be under separate bond and contract, and let out perhaps to different individuals, and that the legislature should not be held responsible for such a scheme, must fall to the ground in view of the fact that the general scheme for working the roads by contract, as provided by ch. 119 of the act in question, stipulates that all monies from the collection of a commutation tax must be expended in that particular district, village or town from which the same was collected; the only monies to be used in all parts of the county promiscuously being the *ad valorum* tax of the county. It will be seen that some districts and sections of the county would perhaps have a larger fund available

for road purposes than others, and consequently should have better roads than others. Again, certain links or sections of a road might require a greater expenditure of labor and money than certain other links or sections of the same road. It will be readily apparent, therefore, that the only equitable and just way of working the public roads, giving to each road the labor and attention which it should have in view of the funds appropriated for its construction and maintenance, would be to let each road or section of a road be figured upon and let out separately.

We think that the legislature intended by the act to so regulate the distribution of the funds available for road purposes as to secure a fair and equitable proportion of the fund for every part of the county; and to effectuate this purpose the Act of 1900 gave to the counties power to let out the roads as an entirety and by one contract or to let out each separate link or section of the road, to be worked by separate contracts. There is nothing in the statute requiring that every contract should be to separate individuals, but the intent of the statute is that every link or section of every road shall be figured upon and estimated and let out separately. The case of *State v. Vice*, *supra,* is directly in point here; and unless a plain and natural construction of the first, fourth and fifth paragraphs of ch. 119 of the statute justifies the county board in letting out the work, at and for a lump sum, then it must follow that the appellant's contract is a nullity.

Argued orally by *Garland Q. Whitfield,* for appellant.

MAYES, J., delivered the opinion of the court.

Chapter 119, § 1, p. 153, of the Laws of 1900, provides that the board of supervisors of the various counties of the state of Mississippi may, at the regular April term, or any other regular meeting after the passage of the act, meet and classify the public roads in their respective counties as roads of the first-

class and roads of the second-class, which roads are to be divided into convenient links and worked by contract. By section 11 of the act it is provided that the act shall have no application to any county in the state, except it be so ordered by the board, which order shall be entered on the minutes of the board. At the regular May term in 1902 the board of supervisors of Pike county, by an order duly entered on the minutes, adopted chapter 119 as the road law for that county. Subsequently the board classified the public roads of the county into roads of the first-class and roads of the second-class, and divided same into convenient links, and inspected same as required. After noting the character and amount of work necessary to make them good and acceptable highways, the board made plans and specifications for the working of the roads and filed same with the clerk of the board of supervisors for the inspection of prospective bidders prior to the letting of the contract. After this was done the board advertised for bids as required by section 5 of the act, and let thhe contracts for working the public roads of the county.

Appellant, Quin, appeared and bid for the working of all the roads in the second and third districts at an aggregate value of $95 per mile for each of the districts. The bid made by Quin was made as a lump bid for the whole work to be done on the roads in the second and third supervisors' districts, and was not for each separate link advertised. The contract was duly let to him, and the aggregate amount of his bid for the two districts amounted to $24,272.50, for the three years for which the contract was let. The other three districts were bid upon by other parties in the same way, and let out to one D. M. Simmons and Smith & Winborn, so that all the roads of the county were let to be worked by contract. Quin duly executed a bond for the sum of $24,224, which bond was received and approved by the president of the board of supervisors. After being awarded the contract and executing the bond, Quin entered upon the work of the road. The county paid him for services rendered

under this contract the sum of $19,853, leaving a balance due of $4,419.50. After full performance of the contract Quin made demand on the board for the balance due him, which it declined to pay, whereupon he brought this suit.

There are two counts in the declaration, one on the contract as made and the other on a *quantum meruit*. A demurrer was interposed by the county to both counts on the ground, first, that the declaration states no cause of action; second, that the declaration did not show by sufficient averment that the board of supervisors of Pike county put in operation the machinery provided by law for working the public roads by contract, and that the declaration did not show that the roads were divided and classified as provided by law; third, that the contract showed that the working of the roads was a contract for the working of the second and third districts of Pike county, and not for working the public roads of the county as an entirety, or by links and sections; fourth, that the contract is null and void, because the board of supervisors had no authority to make any such contract; fifth, that the second count undertakes to recover on a *quantum meruit*. This demurrer was sustained by the court, and the suit dismissed.

The declaration shows almost a literal compliance by the board of supervisors with every provision of the law in regard to working the roads by contract under the act above cited; the exception being in approving a bond for a little less than the amount of Quin's bid, the effect of which we will notice later. The board adopted the law in the manner required by chapter 119, and entered the order on the minutes. Afterwards it inspected and classified the roads into roads of the first and roads of the second-class, and divided them into convenient links. After this they advertised the letting of the contracts as required by section 5. The contract was made in accordance with the requirements of this section; that is to say, they were let for a period of three years. In the specifications advertising these roads the links appeared as required by law, and there

was nothing in law or in fact to prevent any one from bidding on any separate link so advertised, or on the whole or any part of the work to be done in the county. Nothing in the declaration shows that the board of supervisors precluded bids for separate links; but all they did was to accept the bid of Quin at an aggregate value of $95 per mile to work all the roads in supervisor's districts two and three. There is nothing in the law forbidding the board of supervisors from accepting or making such a contract; that is to say, for an entire supervisor's district. In order to make this contract valid it was not essential that each link should be contracted for separately. In furtherance of the best interest of the county the board could have accepted a bid for any link, or for any two or more links, or for all the links advertised in any supervisor's district, or for all the links advertised in one or more of the districts, at an aggregate value.

The case of *State v. Vice,* 71 Miss. 912, 15 South. 129, has no application to this case. That case was decided under section 3929, Code of 1892, which provided that each road or subdivision should be let under a separate contract, but the board of supervisors in disregard of this provision let the work in a lump contract, and the court held that the contract was void. There is no such provision as this in the Act of 1900. Nor is there anything in the Act of 1900 which requires a contract to be made for each division or road let. The facts in the case of *State v. Edwards,* 81 Miss. 399, 33 South. 172, make a very different case from the one presented by this record, and that case cannot be used as authority for any of the contentions made on the part of appellee. In the case of *Elmore v. State,* 81 Miss. 422, 33 South. 225, the opinion shows that the indictment did not charge that the board of supervisors had done any of the things which the law required to constitute a valid contract. The court held, on a demurrer to an indictment against a party charged with violating the contract, as a matter of course, that because of the failure on the part of the board to

make a valid contract no prosecution could be conducted against a contractor under section ten of the act for neglect of duty under the contract.

The only other point relied on by appellees is the fact. that the amount of the bid made by Quin was for $24,272.50, and the bond given was only $24,224. The bond given was for a little less than the bid, whereas the law provided that it should not be less than the amount of the bid. It is manifest that this was a mere unintentional error on the part of the board, not substantial in nature or an intentional disregard of the statute. We do not think this irregularity is sufficient to invalidate the contract in this case. In the *Edwards case, supra,* the facts show that the board affirmatively ordered a bond to be executed in violation of the positive requirements of the statute. Such is not the case here, nor is there any substantial discrepancy.

*The judgment is reversed and cause remanded.*